IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA -- WESTERN DIVISION
Civil Action No.5:25-CV-377-D

| | |
|---|---|
| LESLIE A. MARTIN,<br><br>        Plaintiff,<br><br>   v.<br><br>WAKE COUNTY PUBLIC SCHOOL SYSTEM,<br><br>        Defendant. | **MEMORANDUM OF LAW IN SUPPORT OF BOARD'S MOTION TO DISMISS COMPLAINT** |

Defendant Wake County Board of Education (herein "the Board"), by and through counsel,[1] pursuant to Local Civil Rules 7.1(e) and 7.2, E.D.N.C., submits this Memorandum of Law in support of its Motion to Dismiss Complaint.

## STATEMENT OF THE CASE

Plaintiff, proceeding *pro se*, filed this Complaint on June 27, 2025, seeking to assert claims for discrimination, retaliation, failure to accommodate, and constructive discharge. DE 1. The Board received the Complaint and summons on August 22, 2025. DE 5. Defendants timely filed a motion to dismiss on September 10, 2025. DE 9. This Memorandum is submitted contemporaneously pursuant to Local Rules 7.1(e) and 7.2, E.D.N.C., in support of the Board's Motion to Dismiss Complaint.

---

[1] As will be discussed in this brief, the Wake County Board of Education ("the Board") is the legal entity capable of suing and being sued related to the operation of the Wake County Public School System ("WCPSS"). Plaintiff improperly named the WCPSS as defendant in the Complaint. The Board is responding on behalf of WCPSS.

<u>**STATEMENT OF FACTS AS ALLEGED IN THE COMPLAINT**</u>

In June 2023, Plaintiff began working at Carpenter Elementary School in the Wake County Public School System ("WCPSS" or "District") as an instructional assistant in a special education pre-kindergarten classroom. Compl. ¶ 2[2]. Plaintiff alleges that she suffers from epilepsy, which "arose from a brain tumor and two neurosurgeries" that occurred ten years ago and that she experienced migraines following a head injury in August 2023. *Id.* ¶¶ 3–4. Plaintiff claims that her "conditions" are "exacerbated by the kind of physical exertion, stress, and exposure to chaotic or high sensory environments found in special education at Carpenter Elementary School." *Id.* ¶ 6.

On October 20, 2023, Plaintiff requested to be reassigned out of the special education classroom, citing her disability and alleging that "it would hinder her performance in [that classroom]." *Id.* ¶ 7. The District complied with that request for reassignment, and Plaintiff then worked in a regular kindergarten classroom for the remainder of the 2023–2024 school year. *Id.* ¶ 8. Plaintiff alleges that at the end of the 2023–2024 school year, she learned that the teacher she had been assisting would be moving to a different classroom next school year, and that an assistant principal at the school, Newton Miller, told Plaintiff that she was being reassigned to a special education classroom. *Id.* ¶¶ 9–10. During that conversation, according to Plaintiff, Mr. Miller allegedly said that "there were no other positions." *Id.* Thereafter, Plaintiff submitted an accommodations request to human resources. *Id.* ¶ 12. According to Plaintiff, the next day, she was "provided a job code by human resources for an instructional assistant position in a *non-*special education kindergarten classroom," and that she "was granted an accommodation." *Id.* ¶¶

---

[2] Hereinafter, all paragraph citations are to the Complaint filed on June 27, 2025. DE 1.

2

13, 30–31. Plaintiff alleges that this "accommodation" was "not honored by the administration" because she was "temporarily placed" in a special education classroom on June 18, 2024. *Id.* ¶ 31.

Specifically, Plaintiff alleges that on June 18, 2024, a special education kindergarten teacher "told her to cover [the teacher's] classroom which was understaffed." *Id.* ¶ 15. According to Plaintiff, she "entered the room for a few minutes until another coworker came in," but then she "left the classroom because [she] was not supposed to be there from what [she and] WCPSS had agreed upon." *Id.* ¶¶ 16–17. Plaintiff alleges that she was criticized by "multiple faculty members" for leaving the classroom, and that they told her to go back to the classroom, which she allegedly returned to "for about an hour."[3] *Id.* ¶¶ 18–19.

Plaintiff claims that two days after she covered a special education classroom for about an hour, Mr. Miller "altered" ratings on her annual evaluation from "Accomplished" and "Proficient" to "Developing" without "specifics provided."[4] *Id.* ¶¶ 20–21. Plaintiff alleges that the work environment at WCPSS "became hostile" when on June 28, 2024, Mr. Miller did not introduce Plaintiff to the new teacher she would be working with and allegedly "ignored [her] presence." *Id.* ¶ 22. According to Plaintiff, soon after, she was called into Mr. Miller's office and "presented with a sub-standard annual evaluation" and placed on a conditional evaluation plan. *Id.* ¶ 23. On June 30, 2024, Plaintiff submitted her resignation letter to the District. *Id.* ¶ 25. In that letter, Plaintiff

---

[3] Plaintiff did not allege in her EEOC Charge that she was asked to cover a special education classroom on June 18, 2024. This alleged incident is entirely absent from her EEOC Charge. *See* Exhibit A ("Charge of Discrimination").

[4] Plaintiff's allegations that there were no specifics contained in the annual evaluation contradicts the allegations in her EEOC Charge, where she stated that the negative performance review was based on her not "fully meet[ing] expectations in the spheres of support of learning and teaching, quality of work, relationships with others, dependability, and initiative." *Compare* Exhibit A, *with* Compl. ¶¶ 20–21.

claims that she was "constructively discharged" and "targeted" because of her disability and her "inability to accept reassignment" to a special education classroom. *Id.*

On October 17, 2024, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 26; *see also* Exhibit A ("Charge of Discrimination"). The Charge alleged discrimination based on disability, retaliation, failure to accommodate, and constructive discharge, and specified the timeframe of the alleged conduct was from July 28, 2024, to July 30, 2024.[5] The EEOC closed its investigation without findings and issued a letter of right to sue on March 31, 2025. *Id.*; *see also* Exhibit B ("Right to Sue Letter"). Plaintiff filed her Complaint in federal court on June 27, 2025, requesting damages for discrimination, retaliation, failure to accommodate, and constructive discharge.

## STANDARD OF REVIEW

I. **STANDARDS OF REVIEW FOR FED. R. CIV. P. 12(b)(2), 12(b)(4), AND 12(b)(6) MOTIONS.**

The existence of personal jurisdiction is a threshold issue, and absent a proper basis for personal jurisdiction, a case must be dismissed. On a motion to dismiss, the party asserting jurisdiction bears the burden of establishing personal jurisdiction by a preponderance of the evidence. *Mylan Labs, Inc. v. Akzo*, 2 F.3d 56, 60 (4th Cir. 1993). While the court must construe pleading allegations in the light most favorable to the plaintiff, the court "must then determine whether the facts proffered by the party asserting jurisdiction make out a case of personal jurisdiction over the party challenging jurisdiction." *White ex rel. White v. Aetna Life Ins. Co.*, 519 F.Supp.3d 253, 258 (W.D.N.C. 2021) (*citing Sneha Media & Entm't, LLC v. Associated*

---

[5] Plaintiff resigned on June 30, 2024, so it is unclear why Plaintiff identified July 28, 2024, to July 30, 2024, as the timeframe of the alleged discriminatory conduct in her EEOC Charge.

4

*Broad. Co. P Ltd.*, 911 F.3d 192, 196–97 (4th Cir. 2018)). "Fed. R. Civ. P. 12(b)(2) provides for dismissal of a defendant for lack of personal jurisdiction." *Dublin v. UNC Rex Healthcare*, No. 5:22-CV-507-BO-RJ, 2024 WL 252062, at *1 (E.D.N.C. Jan. 23, 2024).

"Rule 12(b)(4) authorizes dismissal for insufficient process, or a deficiency in the content of the documents that have been served." *Oppenheimer v. Lee*, No. 5:23-CV-610-BO-RJ, 2024 WL 1661238, at *1 (E.D.N.C. Apr. 17, 2024). When the "Complaint and Summons name a non-existent entity, process is deficient." *Slocum v. Duke Progress Energy*, No. 5:23-CV-00680-M, 2024 WL 1481069, at *1 (E.D.N.C. Mar. 19, 2024), *report and recommendation adopted*, No. 5:23-CV-00680-M-RN, 2024 WL 1642760 (E.D.N.C. Apr. 16, 2024). "When a complaint fails to obtain sufficient process on a defendant, it is subject to dismissal." *Id.*

Motions to dismiss under Rule 12(b)(4) point to the importance of actual notice, but "plaintiffs must still comply with the plain requirements of Rule 4." *May v. Martin Fein Interest Ltd.*, 5:21-CV-00083-M, 2022 WL 1597820, *3 (E.D.N.C. May 19, 2022). Actual notice cannot be achieved with insufficient process, "even under the liberal construction of the rules applicable to a pro se plaintiff." *May v. Martin Fein Interest Ltd.*, *supra*, at *3 (*quoting Elkins v. Broome*, 213 F.R.D. 273, 305 (M.D.N.C. 2003)). "A motion under Rule 12(b)(4) seeks dismissal based on insufficient process, i.e., 'the forms are technically deficient (e.g., wrong name) or otherwise deficient in ways that are unrelated to service of the pleadings.'" *Id.* at *4 (internal citation omitted).

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). When considering a motion to dismiss under Rule 12(b)(6), a court must accept

as true all well-pleaded factual allegations in the complaint, viewing the complaint in a light most favorable to the plaintiff. *Mylan Labs.,* 7 F.3d at 1134. However, a plaintiff has "the burden . . . to allege facts sufficient to state all the elements of her claim." *Bass v. E.I. Dupont De Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (affirming Rule 12(b)(6) dismissal of plaintiff's claim of hostile work environment discrimination). "While a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff *is* required to allege facts that support a claim for relief." *Id.*

In reviewing the legal sufficiency of a complaint, the Court cannot assume facts or allegations not contained in the complaint. *Estate Const. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 220–221 (4th Cir. 1994). Mere allegations that a defendant violated the law are insufficient to survive a motion to dismiss made under Rule 12(b)(6). *Id.* "While the court is required to accept as true all well pleaded allegations in the plaintiff's complaint, the court is not required to accept as true the legal conclusions set forth in the complaint." *Dist. 28, United Mine Workers of America, Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085–86 (4th Cir. 1979).

A motion to dismiss under Rule 12(b)(6) will succeed if a plaintiff fails to establish a "plausible" claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009) (applying *Twombly* "plausibility standard"); *Coleman v. Maryland Ct. of Appeals,* 626 F.3d 187, 190 (4th Cir. 2010) (same). Further, when considering a motion to dismiss, a court need not accept a complaint's legal conclusions. *Iqbal,* 556 U.S. at 678–79; *Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). Similarly, a court need not accept as true a plaintiff's "unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts. v. J.D. Assocs. Ltd.*, 213 F.3d 175, 180 (4th Cir.

6

2000). Vague and conclusory allegations also do not state a claim upon which relief may be granted. *Simpson v. Welch*, 900 F.2d 33, 35 (4th Cir. 1990). A complaint must allege "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

While ruling on a motion to dismiss under Rule 12(b)(6), a court is generally limited to allegations contained in the complaint. *Goines v. Calley Cmty. Servs. Bd.*, 822 F.3d 159, 166–67 (4th Cir. 2016). However, courts may also consider documents explicitly incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007)). In addition, a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted). The EEOC exhaustion requirement is "an integral part" of the "enforcement scheme" of both Title VII and Title I of the ADA.[6] *Sydnor v. Fairfax County, Va.*, 681 F.3d 591, 593 (4th Cir. 2012). A court may consider an EEOC charge in particular without having a motion to dismiss converted to one for summary judgment, because an EEOC charge "is central to

---

[6] Courts analyze claims under the ADA similarly to how they analyze claims under Title VII. *See Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 322 (6th Cir. 2012) ("The ADA is clear and forthright. Simply put, the ADA was enacted to expand the protection against discrimination beyond that afforded by Title VII. . . . The ADA explicitly cross-references and adopts Title VII's enforcement section, including "powers, remedies, and procedures."); *see also Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 235 (4th Cir. 2016) (finding the Sixth Circuit's analysis of the ADA's legislative history in *Lewis* "to be well-reasoned")

Plaintiff's claim in that Plaintiff must rely on it to establish she has exhausted her administrative remedies." *Brown v. Inst. for Fam. Centered Servs., Inc.*, 394 F. Supp. 2d 724, 729 (M.D.N.C. 2005); *see also Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

## ARGUMENT

Plaintiff's claims against the Board must be dismissed for three reasons. First, Plaintiff has failed to name a proper entity as defendant in her Complaint. Second, Plaintiff has failed to exhaust administrative remedies with respect to her failure to accommodate claim. Third, Plaintiff has failed to allege facts sufficient to state any claim upon which relief may be granted.

### I. PLAINTIFF'S COMPLAINT MUST BE DISMISSED UNDER FED. R. CIV. P. 12(b)(4) AND 12(b)(2) FOR FAILURE TO NAME A PROPER ENTITY AS DEFENDANT.

The Fourth Circuit has explained that "a governmental entity may only be sued if the law of the state in which the court is located permits it." *Smith v. Munday*, 848 F.3d 248, 256 (4th Cir. 2017). Under North Carolina law, "no statute permits a suit against a local school system. Instead, suits against local education agencies must be brought against the local board of education." *Sawyer v. Elizabeth City Pasquotank Pub. Sch. Sys.*, No. 23-CV-00026-M-RN, 2023 WL 9065957, at *4 (E.D.N.C. Dec. 6, 2023), *report and recommendation adopted*, No. 23-CV-00026-M-RN, 2024 WL 41625 (E.D.N.C. Jan. 3, 2024); *see also* N.C. Gen. Stat. § 115C-40. A plaintiff's failure to identify the local board of education as the proper defendant is a basis for dismissal of the complaint. *Sawyer*, 2024 WL 41625, at *2 (dismissing case, in part, because the named Defendant, the "Elizabeth City Pasquotank Public School System," was not the proper party); *Dodd v. Brunswick*, No. 7:10-CV-101-FL, 2010 WL 3075564, at *1 (E.D.N.C. Aug. 5, 2010) (dismissing

8

*pro se* plaintiff's suit naming "Brunswick County Schools" as defendant rather than the local school board); *Hunter v. Wake County Bd. of Ed.*, No. 5:08-CV-62-D, 2008 WL 2695813, at * 1 (E.D.N.C. July 8, 2008) (dismissing Wake County Public Schools as defendant because it "is not a corporate entity subject to suit under North Carolina law").

Plaintiff has failed to name a proper entity as a defendant and seeks recovery from an entity not subject to suit. Under North Carolina law, the Wake County Board of Education is the body corporate and entity responsible for defending suits against the local school administrative unit. *See* N.C. Gen. Stat. § 115C-40. Here, the Complaint and Civil Summons in this matter name the "Wake County Public School System" as defendant, which merits dismissal of the Complaint, because WCPSS "is not a corporate entity subject to suit under North Carolina law." *See Hunter*, 2008 WL 2695813, at * 1. WCPSS cannot be a named defendant in this action because, as a matter of law, no such legal entity exists.

Even though process under Rule 4 goes to the issue of notice, actual notice cannot be achieved with insufficient process, "even under the liberal construction of the rules applicable to a pro se plaintiff." *May v. Martin Fein Int. Ltd.*, No. 5:21-CV-00083-M, 2022 WL 1597820, at *3 (E.D.N.C. May 19, 2022) (quoting *Elkins v. Broome*, 213 F.R.D. 273, 305 (M.D.N.C. 2003)). "A motion under Rule 12(b)(4) seeks dismissal based on insufficient process, i.e., 'the forms are technically deficient (e.g., wrong name) or otherwise deficient in ways that are unrelated to service of the pleadings.'" *Id.* at *4 (internal citation omitted). "When a complaint fails to obtain sufficient process on a defendant, it is subject to dismissal." *Slocum v. Duke Progress Energy*, No. 5:23-CV-00680-M, 2024 WL 1481069, at *1 (E.D.N.C. Mar. 19, 2024), *report and recommendation adopted*, No. 5:23-CV-00680-M-RN, 2024 WL 1642760 (E.D.N.C. Apr. 16, 2024). Defendant

9

Board therefore moves for dismissal of Plaintiff's Complaint for insufficient process under Fed. R. Civ. P. 12(b)(4) for improperly naming WCPSS as defendant. *See Dodd v. Brunswick*, No. 7:10-CV-101-FL, 2010 WL 3075564, at \*1 (E.D.N.C. Aug. 5, 2010) (dismissing plaintiff's suit naming "Brunswick County Schools" as defendant rather than the local school board).

A motion under Rule 12(b)(4) "implicate[s] a court's personal jurisdiction over a defendant." *Slocum*, 2024 WL 1481069, at \*1. "Fed. R. Civ. P. 12(b)(2) provides for dismissal of a defendant for lack of personal jurisdiction." *Dublin v. UNC Rex Healthcare*, No. 5:22-CV-507-BO-RJ, 2024 WL 252062, at \*1 (E.D.N.C. Jan. 23, 2024). This court has dismissed a *pro se* plaintiff's complaint that improperly named as defendant the Wake County Public School System pursuant to Rules 12(b)(2) and 12(b)(4). *See Gonzalez v. Wake Cnty. Pub. Sch. Sys.*, No. 5:20-CV-00684-M, 2022 WL 125295, at \*4 (E.D.N.C. Jan. 12, 2022) (granting Board's motion to dismiss plaintiff's complaint in part "pursuant to Rules 12(b)(2) and 12(b)(4) with respect to Plaintiff's incorrect naming of WCPSS in the Complaint"). Therefore, the Board also moves for dismissal of the Complaint under Rule 12(b)(2) for lack of personal jurisdiction for improperly naming WCPSS as defendant.

In the alternative, should this Court consider allowing Plaintiff an opportunity to cure the insufficient process, the Board contends (without waiving any defenses) that such action would be futile and the claims against it must be dismissed in any case for the reasons discussed below.

## II. PLAINTIFF HAS FAILED TO EXHAUST ADMINISTRATIVE REMEDIES WITH RESPECT TO THE FAILURE TO ACCOMMODATE CLAIM.

The Fourth Circuit has clearly held that the claims that a Plaintiff may bring in a civil suit following an EEOC charge are limited to those raised in her charge:

10

> The goals of providing notice and an opportunity for an agency response would be undermined, however, if a plaintiff could raise claims in litigation that did not appear in his EEOC charge. To prevent such gamesmanship, we have held that the "scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents."

*Sydnor v. Fairfax Cty.*, 681 F.3d 591, 593 (4th Cir. 2012) (citing *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir.2009)); s*ee also Balas v. Huntington Ingalls Industries, Inc.*, 711 F.3d 401 (4th Cir. 2013) (affirming dismissal of Title VII claims for failure to promote and hostile work environment—which Plaintiff alleged occurred prior to her termination—where Plaintiff did not cite promotion claim in EEOC charge and identified the date of her discharge as the "earliest date discrimination took place"); *Beane v. Agape Mgmt. Servs., Inc.*, No. C/A 3:08-3445-CMCPJG, 2009 WL 2476629, at *3 (D.S.C. Aug. 11, 2009) (dismissing allegations of retaliation, race discrimination, and hostile work environment where narrative in EEOC charge "did not mention that [plaintiff] was the target of race discrimination or any incidents that suggest that she was subjected to a hostile work environment").

"Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent" employment discrimination lawsuit. *Keener v. Universal Companies, Inc.*, 128 F. Supp. 3d 902, 912 (M.D.N.C. 2015) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir.1996)). "While the Fourth Circuit has long recognized that EEOC charges 'must be construed with utmost liberality,' the Fourth Circuit has also cautioned that [a] court is 'not at liberty to read into administrative charges allegations they do not contain.'" *Id.* at 914 (quoting *Alvarado*, 848 F.2d at 460) (internal citation omitted).

11

The Fourth Circuit has repeatedly held that when Title VII claims in a "court complaint are broader than the allegation of a discrete act or acts in [the] administrative charge, they are procedurally barred." *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 306 (4th Cir. 2019) (internal quotations omitted); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) ("Our cases have made clear that the factual allegations made in formal litigation must correspond to those set forth in the administrative charge.").

The EEOC filing requirement is not jurisdictional but is a "mandatory claim-processing rule" that must be enforced by the court if timely raised by the Defendant. *Fort Bend Cty. v. Davis*, 587 U.S. 541, 550–52 (2019). Failure to comply with this statutory requirement is a proper basis for dismissal under Rule 12(b)(6). *See Stewart v. Iancu*, 912 F.3d 693, 702 (4th Cir. 2019) (concluding that district court "should have considered the 180-day waiting period as a non-jurisdictional rule and decided the case under Federal Rule of Civil Procedure 12(b)(6)"); *Montgomery v. Crothall Healthcare, Inc.*, No. CV RDB-20-1154, 2021 WL 75136, at *3 (D. Md. Jan. 8, 2021) ("exhaustion is a 'claim-processing rule,' and it is 'mandatory' in the sense that a court must enforce the rule if a party 'properly raises it.' . . . if the defendant asserts objections in a timely fashion such arguments may warrant dismissal under Rule 12(b)(6)") (citation omitted).

Here, Plaintiff filed her EEOC Charge on October 17, 2024. *See* Exhibit A. The Charge alleged discrimination based on disability, retaliation, failure to accommodate, and constructive discharge, and specified the timeframe of the alleged conduct was from July 28, 2024, to July 30, 2024.[7] *Id.* No continuing action was noted on the Charge. *Id.* In the Charge, Plaintiff alleged that

---

[7] Plaintiff resigned on June 30, 2024, so it is unclear why Plaintiff identified July 28, 2024, to July 30, 2024, as the timeframe of the alleged discriminatory conduct in her EEOC Charge.

she asked for an accommodation to work as an instructional assistant in a non-special education classroom.[8] *Id.* Plaintiff then claimed in the Charge that she received a negative performance review on June 28, 2024, and then was allegedly told she that she would be transferred back to a special education classroom for the following school year.[9] *Id.* Plaintiff then resigned from WCPSS on June 30, 2024. *Id.*

Following submission of the Charge and the EEOC's closure without findings, Plaintiff alleges for the first time in her Complaint that on June 18, 2024, a special education kindergarten teacher "told her to cover [the teacher's] classroom which was understaffed." *Id.* ¶ 15. According to Plaintiff, she "entered the room for a few minutes until another coworker came in," but then she "left the classroom because [she] was not supposed to be there from what [she and] WCPSS had agreed upon." *Id.* ¶¶ 16–17. Plaintiff alleges that she was criticized by "multiple faculty members" for leaving the classroom, and that they told her to go back to the classroom, which she allegedly returned to "for about an hour." *Id.* ¶¶ 18–19. Following this incident, Plaintiff states that she was presented with a substandard annual evaluation. *Id.* ¶ 23.

At no point in her EEOC Charge did Plaintiff allege any of the above conduct supporting her failure to accommodate claim, as the entire alleged June 18, 2024, incident is missing from the EEOC Charge. "Factual allegations made in formal litigation must correspond to those set forth in the administrative charge" for a Title VII suit[10] to have exhausted administrative remedies.

---

[8] Plaintiff does not say in her Charge whether she received an accommodation after making this request, but her Complaint states that she was accommodated: "WCPSS complied and I worked in a regular kindergarten classroom for the remainder of the 2023–2024 year." *See* Compl. ¶ 8.

[9] Plaintiff also leaves out from her Charge but includes in her in Complaint that "after [she] reapplied for an accommodation through human resources, [she] was granted an accommodation." *See* Compl. ¶ 31.

[10] "The ADA incorporates the administrative enforcement provisions of Title VII of the Civil Rights Act of 1964 ("Title VII"), including the requirement that a plaintiff exhaust [her] administrative remedies by timely filing a charge with the EEOC concerning the alleged discrimination before filing suit in federal

*Chacko*, 429 F.3d at 509; *see also Parker*, 915 F.3d. at 306 (dismissing a discriminatory termination claim "as it alleges a broader pattern of misconduct than is stated in the administrative charging document."). "A plaintiff fails to exhaust [her] administrative remedies where … [her] administrative charges reference different time frames, actors, and discriminatory conduct that the central factual allegations in [her] formal suit." *Sydnor*, 681 F.3d at 593 (quoting *Chacko*, 429 F.3d at 506). Plaintiff has failed to exhaust administrative remedies with respect to her discrimination claims because the facts alleged in support of her claims—that she was "temporarily reassigned" to a special education classroom on June 18, 2024, after being granted an "accommodation" and then two days later saw her performance evaluation "altered"—were not included in her EEOC Charge. *Compare* Compl. ¶¶ 15–20, *with* Exhibit A. Moreover, Plaintiff's EEOC Charge listed July 28, 2024, as the earliest date that the discrimination took place, but her subsequent lawsuit alleges that she was discriminated against on June 18, 2024. Plaintiff alleges an entirely "different time frame and discriminatory conduct" in her lawsuit than what she alleged in the EEOC Charge. *See* Exhibit A; *Sydnor*, 681 F.3d at 593 (quoting *Chacko*, 429 F.3d at 506).

As Plaintiff has failed to exhaust her administrative remedies with respect to the June 18, 2024, classroom coverage incident, those allegations are procedurally barred, and her Complaint must be evaluated as if those allegations were not present. *See Parker*, 915 F.3d at 306. Without the June 18, 2024, classroom coverage incident, all that remains with respect to Plaintiff's failure to accommodate claim is that the District accommodated her requested classroom assignment on two different occasions. *See* Compl. ¶¶ 30–31 ("WCPSS initially granted an accommodation in

---

court." *Irvin v. Versatrim, LLC*, 737 F. Supp. 3d 297, 307 (E.D.N.C. 2024); *see also Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012) (same).

14

the 2023-2024 school year . . . After I reapplied for an accommodation through human resources, I was granted an accommodation."). Because Plaintiff failed to exhaust her administrative remedies with respect to the June 18, 2024, coverage incident, and all that remains is that District accommodated her requested classroom assignment, Plaintiff has failed to plead that the District refused to make the accommodation—a required element of a failure to accommodate claim. As such, Plaintiff's failure to accommodate claim must be dismissed pursuant to Rule 12(b)(6) for failure to state a plausible claim for relief.

### III. PLAINTIFF'S CLAIMS OF DISABILITY DISCRIMINATION, RETALIATION, FAILURE TO ACCOMMODATE, AND CONSTRUCTIVE DISCHARGE SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

In addition to Plaintiff's failure to name a proper party as defendant and failure to exhaust her failure to accommodate claim, Plaintiff's action should be dismissed in its entirety for failure to state any ADA claim upon which relief can be granted.

#### A. Plaintiff has failed to state a claim for disability discrimination and retaliation against the Board because Plaintiff cannot show that she suffered an adverse action.

In order to survive a motion to dismiss on a discrimination claim under Title I of the ADA and raise a right to relief above a speculative level, there must be factual allegations by Plaintiff that "(1) she had a disability as defined in the ADA; (2) she was a 'qualified individual,' i.e., able to perform the essential functions of her job with or without reasonable accommodation; and (3) her employer took an adverse action against her on account of her disability." *Craddock v. Lincoln Nat. Life Ins. Co.*, 533 F. App'x 333, 336 (4th Cir. 2013). In order to establish a prima facie case of retaliation, "the plaintiff must prove that: (1) she has engaged in protected conduct; (2) she suffered an adverse action after engaging in the protected conduct; and (3) there was a causal link

15

between the protected conduct and the adverse action." *Laird v. Fairfax Cnty.*, 978 F.3d 887, 892 n.4 (4th Cir. 2020). Both disability discrimination claims and retaliation claims require plaintiffs to show that an adverse action occurred. *See Craddock*, 533 F. App'x at 336; *Laird*, 978 F.3d at 892 n.4.

An adverse employment action is an action that "adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007). Typical examples of adverse employment actions include "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, [and] reduced opportunities for promotion." *Cole v. Wake Cnty. Bd. of Educ.*, 494 F. Supp. 3d 338, 345 (E.D.N.C. 2020), *aff'd*, 834 F. App'x 820 (4th Cir. 2021). An alleged retaliatory action must be "materially adverse," meaning that the plaintiff must show that the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Laird*, 978 F.3d at 893. Similarly, for a discrimination claim, the adverse action must result in "some significant detrimental effect," requiring more than a position that is "less appealing" to the plaintiff. *Id.* The Fourth Circuit has concluded that placement into a performance improvement plan does not constitute an adverse action. *See Melendez v. Bd. of Educ. for Montgomery Cnty.*, 711 F. App'x 685, 688 (4th Cir. 2017).

"[A] poor performance evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." *Jensen-Graf v. Chesapeake Employers' Ins. Co.*, 616 F. App'x 596, 598 (4th Cir. 2015) (dismissing complaint of discrimination because Plaintiff who was put on a performance improvement plan had not alleged any action that could reasonably be considered an adverse

employment action) (citation omitted). In *Jensen-Graf*, the Fourth Circuit dismissed plaintiff's discrimination claim when plaintiff failed to allege that she "received lower pay, was demoted, was passed over for a promotion, failed to receive a bonus, or given significantly difference responsibilities because she was placed on the [performance improvement plan]." *Id.*

District courts in the Fourth Circuit have similarly concluded, consistent with the Fourth Circuit's guidance, that "simply receiving a negative performance evaluation or being placed on a performance improvement plan, however, is not an adverse action." *Peterson v. Cap. One, N.A.*, 705 F. Supp. 3d 484, 494 (D. Md. 2023) (citing *Pulley v. KPMG Consulting, Inc.*, 348 F. Supp. 2d 388, 395 (D. Md. 2004), *aff'd*, 183 F. App'x 387 (4th Cir. 2006); *see also Washington v. Offender Aid & Restoration of Charlottesville-Albemarle, Inc.*, 677 F. Supp. 3d 383, 397 (W.D. Va. 2023) ("Being placed on a performance improvement plan does not amount to an adverse employment action unless it is connected to receiving lower pay, being demoted, being passed over for a promotion, failing to receive a bonus, or being given significantly different responsibilities."); *Tom v. Montgomery Cnty. Pub. Sch.*, No. CV 20-3386 PJM, 2021 WL 1720851, at *2 (D. Md. Apr. 30, 2021) (same); *Emami v. Bolden*, 241 F. Supp. 3d 673, 685 (E.D. Va. 2017) (same); *Michael v. Virginia Commonwealth Univ.*, No. 3:18-CV-125-JAG, 2019 WL 128236, at *4 (E.D. Va. Jan. 8, 2019) (same); *Russell v. BSN Med., Inc.*, 721 F. Supp. 2d 465, 477 (W.D.N.C. 2010) (same); *Clapp v. Potter*, 329 F. Supp. 2d 597, 599 (M.D.N.C. 2004) (same).

Here then, where the only consequence allegedly connected to Plaintiff's accommodation request was a negative performance evaluation and placement on an improvement plan, Plaintiff has failed to allege that she suffered an adverse action. Plaintiff alleges that on June 28, 2024, she received a "sub-standard" annual evaluation, which indicated that a "conditional evaluation"

17

would be needed. *See* Compl. at ¶¶ 22–23, 37, 41–42. Two days later, on June 30, 2024, Plaintiff resigned from her employment with the Board. *Id.* ¶ 25. Plaintiff's "sub-standard" annual evaluation does not constitute an adverse action because Plaintiff failed to allege that it was connected to her "receiving lower pay, being demoted, being passed over for a promotion, failing to receive a bonus, or being given significantly different responsibilities." *Jensen-Graf*, 616 F. App'x at 598. In fact, Plaintiff resigned from her position two days after she received that evaluation and before any conditional evaluation could even be conducted. *See* Compl. ¶¶ 23, 25. Plaintiff has not pleaded any facts to show that she suffered "significant detrimental effect," but rather that she was in a "less [than] appealing" position following receipt of a sub-standard performance evaluation. *See Laird*, 978 F.3d at 893. Because Plaintiff has not plausibly pleaded that she suffered an adverse action, her discrimination and retaliation claims must be dismissed.[11]

**B. Plaintiff has failed to state a claim for failure to accommodate against the Board because (I) Plaintiff has failed to exhaust administrative remedies with respect to the June 18, 2024, classroom coverage incident, and (II) Plaintiff has not pleaded sufficient facts to support a plausible claim for relief.**

With regard to the facts needed for a failure to accommodate claim, a plaintiff must show "(1) that [s]he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of [her] disability; (3) that with reasonable accommodation [s]he could perform the essential functions of the position . . . and (4) that the [employer] refused to make such accommodation." *Wilson v. Dollar General Corp.*, 717 F.3d 337, 345 (4th Cir. 2013). "The

---

[11] It should also be noted that, in the absence of consideration of the alleged June 18, 2024, classroom coverage incident because of Plaintiff's failure to exhaust, Plaintiff's retaliation claim essentially proceeds in this manner: Plaintiff was told she would be assigned back to a special education classroom, applied for an accommodation from Human Resources, was granted the requested accommodation, and then received a substandard evaluation. That series of events, on its face, is not a plausible claim for retaliation.

18

plaintiff bears the burden of identifying an accommodation that would allow a qualified individual to perform the job, as well as the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable." *Shin v. Univ. of Md. Med. Sys. Corp.*, 369 Fed. App'x 472, 481 (4th Cir. 2010). "The 'ultimate discretion' to choose among reasonable accommodations rests with the employer. *Hannah v. United Parcel Serv., Inc.*, 72 F.4th 630, 636 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 379 (2023). A reasonable accommodation includes "reassignment to a *vacant* position" that already exists, as the "the ADA does not require that an employer create a new position for a disabled employee." *Perdue v. Sanofi-Aventis U.S., LLC*, 999 F.3d 954, 960 (4th Cir. 2021).

**I. Plaintiff has not pleaded facts that she was refused an accommodation because Plaintiff has failed to exhaust administrative remedies with respect to the June 18, 2024, classroom coverage incident, and her Complaint otherwise pleads on its face that the District accommodated her requested classroom assignment on two different occasions.**

As noted above in Section II, Plaintiff alleges that she was required to cover a special education classroom on June 18, 2024—allegations that were not included in her EEOC Charge. *See id.* ¶¶ 15–20. This court has dismissed a failure to accommodate claim when the plaintiff did not exhaust her administrative remedies with respect to that claim because "essential details [were] missing from the EEOC Charge of discrimination." *See Brown v. Walmart Stores E., LLP*, No. 4:18-CV-20-FL, 2018 WL 4903254, at *4 (E.D.N.C. Oct. 9, 2018) (dismissing failure to accommodate claim when essential details such as when the accommodation was denied were missing from the EEOC charge of discrimination).

Plaintiff failed to exhaust her administrative remedies with respect to the June 18, 2024, classroom coverage incident because she did not include facts regarding this incident in her EEOC

19

Charge. Without those facts, all that remains in the Complaint on this issue is that the District accommodated her requested classroom assignment on two different occasions. *See* Compl. ¶¶ 7–8, 12–13, 30–31. As the only facts that are not procedurally barred indicate that the District provided Plaintiff with her requested accommodation, Plaintiff has failed to satisfy the fourth element of her claim—that the District refused to make the accommodation. *See Brown v. Walmart Stores E., LLP*, No. 4:18-CV-20-FL, 2018 WL 4903254, at *4 (E.D.N.C. Oct. 9, 2018) (dismissing plaintiff's failure to accommodate claim when plaintiff failed to exhaust administrative remedies and defendant-employer granted plaintiff's accommodation request). Therefore, the Board moves for dismissal under Rule 12(b)(6) for failure to state a plausible claim upon which relief may be granted.

### II. Plaintiff has not pleaded sufficient facts to support her failure to accommodate claim because she has not alleged that her employer refused to make the accommodation and because the alleged classroom coverage incident does not amount to a failure to accommodate.

Even if this Court concludes that Plaintiff properly exhausted her administrative remedies, her failure to accommodate claim would nevertheless fail because Plaintiff has not pleaded facts that the District refused to make the accommodation. In the Complaint, Plaintiff alleges that the administration did not "take steps to effectuate" her request for placement in non-special education classroom, as "evidenced by temporary placement in a special needs classroom." Compl. ¶ 31. Plaintiff alleges that a special education kindergarten teacher approached her and told her to cover her classroom which was understaffed and that unspecified "faculty members" berated her for leaving the classroom and told her to return, which she returned to for about an hour. Compl. ¶¶ 15–19.

20

Plaintiff has not alleged that a *supervisor* told her to cover the special education classroom but rather that another *teacher* and other "*faculty members*" did so. *Id.* Plaintiff has also not alleged that a supervisor was even aware that she was asked to cover a special education classroom nor that a supervisor even knew about Plaintiff's alleged classroom coverage after it occurred. *See id.* Plaintiff has not made an allegation against an "employer" or an "agent of such person" as those terms are defined and construed under the ADA. *See* 42 U.S.C. 12111. "[A] coworker does not have power or authority emanating from the employer…" *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 829–30 (6th Cir. 1999) (concluding in the Title VII context that employer was not liable for coworker's conduct). Plaintiff has not alleged facts in her complaint that an individual with supervisory authority over her—that is, an individual who evaluated her work—told her to cover a special education classroom. Accordingly, Plaintiff's failure to accommodate claim must be dismissed because she cannot satisfy the fourth element of her claim—that *her employer* refused to make the accommodation. Even if this Court concludes that the fellow teacher and other faculty members had supervisory authority over Plaintiff, Plaintiff has not alleged that they even had notice or were aware that she was an individual with a disability when they allegedly asked her to cover the special education classroom for about an hour.

If this Court finds that the Plaintiff's fellow teacher and other faculty members had supervisory authority over her, she still has not pleaded facts that the Board refused to make the accommodation. "An employer is not required to provide the exact accommodation that an employee requests" and "employers need not immediately implement or accept accommodations proposed by an employee." *Farquhar v. McCarthy*, 814 F. App'x 786, 788 (4th Cir. 2020). Here, a fellow teacher and faculty members allegedly asking Plaintiff to cover a special education

21

classroom for about an hour does not amount to a refusal to accommodate when Plaintiff has specifically pleaded that the District otherwise granted the accommodation of reassignment to a non-special education classroom for the 2024–2025 school year. *See* Compl. ¶¶ 13, 31. Moreover, educators often cover classrooms for short periods of time when there are staff absences, as there are safety concerns if students are left unsupervised. This alleged classroom coverage incident is, at most, a minor deviation from an accommodation plan that otherwise fully met the Plaintiff's request and does not rise to the level required to plead a failure to accommodate claim. *See, e.g., Shirk v. Trs. of Indiana Univ.*, 2022 WL 17337950, at \*4 (S.D. Ind. Nov. 29, 2022) ("IU gave her effectively everything she asked. The deviations from her ideal accommodation are minor and of no legal significance."). Accordingly, Plaintiff's failure to accommodate claim must be dismissed pursuant to Rule 12(b)(6).

### C. Plaintiff has failed to state a claim for constructive discharge against the Board because a reasonable person in Plaintiff's position would not have resigned.

"To prove constructive discharge, a plaintiff must at the outset show that her employer 'deliberately made [her] working conditions intolerable in an effort to induce [her] to quit.'" *Heiko v. Colombo Sav. Bank,* 434 F.3d 249, 262 (4th Cir. 2006) (citing *Matvia v. Bald Head Island Mgmt., Inc.,* 259 F.3d 261, 272 (4th Cir. 2001)). "Plaintiff must therefore demonstrate: (1) that the employer's actions were deliberate, and (2) that working conditions were intolerable." *Id.* Whether working conditions are intolerable is assessed objectively, from the perspective of a reasonable person. *See Williams v. Giant Food, Inc.,* 370 F.3d 423, 434 (4th Cir. 2004). A court assesses whether working conditions are intolerable "by the objective standard of whether a reasonable person in the employee's position would have felt compelled to resign." *Goldsmith v. Mayor & City Council of Baltimore,* 987 F.2d 1064, 1072 (4th Cir. 1993) (citation omitted). "The doctrine

22

of constructive discharge protects an employee from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers." *Carter v. Ball,* 33 F.3d 450, 459 (4th Cir. 1994) (citation omitted). "Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Id.* (citation omitted).

When reviewing a claim of constructive discharge, courts look to the factual circumstances surrounding the resignation. *Stone v. Univ. of Md. Med. Sys. Corp.,* 855 F.2d 167, 174 (4th Cir. 1998). Courts have found resignations to be involuntary in two circumstances: (1) where the resignation was induced by "an employee's reasonable reliance upon employer's misrepresentation of a material fact concerning the resignation," and (2) where the resignation was obtained by the employer's duress or coercion. *Id.* "Because the claim of constructive discharge is so open to abuse by those who leave employment [voluntarily], [the Fourth Circuit] has insisted that it be carefully cabined." *Boney v. Trs. of Cape Fear Cmty. Coll.*, 366 F. Supp. 3d 756, 763 (E.D.N.C. 2019) (citation omitted).

Plaintiff has not pleaded facts to suggest that her resignation was involuntary, as she has not indicated any misrepresentation that induced her to resign, and she received notice of her assignment to a non-special education classroom. *See* Compl. ¶ 13. Plaintiff alleges that she received a substandard evaluation and that the "action on Mr. Miller's behalf to set [her] on track to demotion created an objectively intolerable environment wherein [she] knew every act of [hers] was under scrutiny against a prejudiced party." Compl. ¶ 47. However, Plaintiff's allegations that the Board presented her with a sub-standard performance evaluation, indicating that a follow-on

23

conditional evaluation was needed, which she alleges caused her to resign, do not rise to the level required to prove constructive discharge. Plaintiff's "apprehension of future termination is insufficient to establish constructive discharge." *Stratton v. Bentley Univ.*, 113 F.4th 25, 40 (1st Cir. 2024) (concluding that a performance improvement plan is insufficient to establish constructive discharge); *see also Melendez v. Bd. of Educ. for Montgomery Cnty.*, 711 F. App'x 685, 688 (4th Cir. 2017) (concluding that plaintiff's "displeasure with her work assignments and her disagreement with her negative performance evaluations do not suffice to support a constructive discharge claim"); *Agnew v. BASF Corp.*, 286 F.3d 307, 310 (6th Cir. 2002) ("[C]riticism in performance reviews and institution of performance improvement plans, alone, do not constitute objectively intolerable conditions."); *Fischer v. Andersen Corp.*, 483 F.3d 553, 557 (8th Cir. 2007) ("An employee is not constructively discharged when an employer merely implements a [performance improvement plan]."); *Perret v. Nationwide Mut. Ins.*, 770 F.3d 336, 339 (5th Cir. 2014) (rejecting argument that a performance improvement plan established a constructive discharge). A reasonable person in Plaintiff's position would not have resigned two days after receiving a substandard performance evaluation and notice that a conditional evaluation would be needed.

To the extent that Plaintiff alleges that her constructive discharge claim is based on the fact that she was told to cover a special education classroom for about an hour, that claim is meritless for two reasons. First, a reasonable employee would not have resigned as a result of this isolated incident. *See Melendez*, 711 F. App'x at 688 (rejecting constructive discharge claim based on a previous isolated incident). Second, Plaintiff alleges no specific facts that she was subjected to intolerable conditions in the special education classroom nor that her disability was exacerbated

24

when she covered the special education classroom for about an hour. Plaintiff also does not plead any facts that suggest she was asked to cover a special education classroom more than once. To the extent that this court concludes that Plaintiff suffered an adverse employment action when she was told to cover the special education classroom on one occasion, "[t]he Fourth Circuit has made clear that not every adverse employment action will rise to the level of constructive discharge." *Cathey v. Wake Forest Univ. Baptist Med. Ctr.*, 90 F. Supp. 3d 493, 508 (M.D.N.C. 2015) (quoting *Johnson v. Shalala*, 991 F.2d 126, 132 (4th Cir.1993)). "An employer's failure to accommodate a disability does not automatically create a claim of constructive discharge, although possibly a 'complete failure to accommodate, in the face of repeated requests, might suffice as evidence to show the deliberateness necessary for constructive discharge.'" *Id.*

Moreover, to the extent that Plaintiff's constructive discharge claim is premised on Mr. Miller failing to introduce her to a new colleague and "ignoring her presence," that also would not suffice to plausibly plead a constructive discharge claim. The Fourth Circuit has concluded that "a run-of-the-mill personality conflict" would not make a reasonable person feel compelled to resign. *See Jones v. Greenville Hosp.*, No. 97-2306, 1998 WL 823481, at *1 (4th Cir. 1998). A reasonable person would not have resigned in Plaintiff's position. Accordingly, Plaintiff's constructive discharge claim must be dismissed pursuant to Rule 12(b)(6) for failure to state a plausible claim for relief.

## CONCLUSION

The Board respectfully requests that the Court grant its Motion to Dismiss Complaint and dismiss with prejudice all claims in this action.

This the 10th day of September 2025.

Respectfully submitted,

THARRINGTON SMITH, L.L.P.

*/s/ Jack Salt*
Jack Salt, N.C. State Bar No. 62640
Stephen G. Rawson, N.C. State Bar No. 41542
THARRINGTON SMITH, L.L.P.
150 Fayetteville Street, Ste 1900
Post Office Box 1151
Raleigh, North Carolina 27602
Telephone: (919) 821-4711
Fax: (919) 829-1583
Email: jsalt@tharringtonsmith.com
        srawson@tharringtonsmith.com
*Attorneys for Defendant Wake County Board of Education*

26

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.2 (f)(3), I hereby certify that the foregoing memorandum of law is 8,128 words as reported by the word-processing software.

This the 10th day of September 2025.

*/s/ Jack Salt*

THARRINGTON SMITH, L.L.P.

27

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that a copy of the foregoing **MEMORANDUM OF LAW**

**IN SUPPORT OF MOTION TO DISMISS COMPLAINT** was electronically filed with the

Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Leslie A. Martin
4021 Bella Park Trail Apt. #334
Raleigh, NC 27613
Lam75e@gmail.com
*Plaintiff*

This the 10th day of September 2025.

THARRINGTON SMITH, L.L.P.

*/s/ Jack Salt*
Jack Salt, N.C. State Bar No. 62640
Stephen G. Rawson, N.C. State Bar No. 41542
THARRINGTON SMITH, L.L.P.
150 Fayetteville Street, Ste 1900
Post Office Box 1151
Raleigh, North Carolina 27602
Telephone: (919) 821-4711
Fax: (919) 829-1583
Email: jsalt@tharringtonsmith.com
srawson@tharringtonsmith.com
*Attorneys for Defendant Wake County Board of Education*

28